## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JORDAN WATERS, ASHLEY SEEK, and ELEANOR THORNTON, individually and on behalf of all similarly situated persons,<br><br>            Plaintiffs,<br><br>v.<br><br>CONCEPT MANAGEMENT OF AIRPORT, INC. d/b/a MALONE'S STEAK & SEAFOOD and FEROZALI DELAWALLA,<br><br>            Defendants. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## <u>COLLECTIVE ACTION COMPLAINT</u>

Plaintiffs Jordan Waters, Ashley Seek, and Eleanor Thornton bring this Collective Action Complaint on behalf of themselves, and all others similarly situated, against Defendants Concept Management of Airport, Inc. d/b/a Malone's Steak & Seafood ("Malone's") and Ferozali Delawalla ("Defendant Delawalla") (collectively "Defendants"), alleging systemic violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Plaintiffs' Consents to Join are attached hereto as Exhibit A.

Plaintiff Waters additionally alleges that she was subjected to discrimination based on her race in violation of 42 U.S.C. § 1981 ("Section 1981"), and that, when she opposed the FLSA violations and the race discrimination, Defendant Malone's retaliated against her, first by suspending her, and then by terminating her employment.

Plaintiffs show the Court as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.   Defendants willfully violated the FLSA in the following ways with respect to Plaintiffs and those similarly situated:

  a.   Defendants, as a regular and routine practice, required Plaintiffs and those similarly situated to participate in an invalid tip pool, pursuant to which Defendants unlawfully withheld their tips.  As an additional consequence of that invalid tip pool, Defendants violated the FLSA by taking a tip credit against Defendants' minimum wage obligations.

  b.   Defendants, as regular and routine practice, required Plaintiffs and those similarly situated to: (i) spend time on work "directly supporting" tips for continuous periods of time exceeding thirty (30) minutes while taking a tip credit for that work time; and/or

2

(ii) spend time performing work not part of the tipped occupation while taking a tip credit for that work time.  Defendants violated the FLSA by taking a tip credit against their minimum wage obligations for time (i) Plaintiffs and those similarly situated performed work "directly supporting" tips in excess of thirty (30) continuous minutes, and/or (ii) Plaintiff and those similarly situated performed work that was not part of the tipped occupation.

c.      Defendants, as a regular and routine practice, required Plaintiffs and those similarly situated to spend more than twenty (20) percent of their workweek performing work "directly supporting" tips and/or work that not part of the tipped occupation while taking a tip credit for that time. Defendants violated the FLSA by taking a tip credit against Defendants' minimum wage obligations for time that Plaintiffs and those similarly situated performed work "directly supporting" tips and/or performed work not part of the tipped occupation exceeding 20 percent of work time per workweek.

d.   Defendants engaged in a policy and practice of artificially inflating the tips Servers received, thereby further invalidating the tip credit.  On information and belief, Defendants assumed that Plaintiffs and those similarly situated received a 20% tip on all orders, regardless of the amount actually received, and then, on the occasions when that assumed amount did not satisfy the tip credit, Defendants then artificially inflated the cash tips attributed to the Server to reflect a higher amount than actually received.

e.   Defendants required Plaintiffs and those similarly situated to work "off the clock" on a regular basis before the start of their shifts.  This created additional minimum wage violations and, as a further consequence, when Plaintiffs Seek and Thornton and those similarly situated worked in excess of forty (40) hours per workweek and were forced to work off the clock, they were not paid overtime for all time worked in excess of 40 hours.

2.   Pursuant to the FLSA, Defendants are liable to Plaintiffs, and those similarly situated, for unlawfully withheld tips, unpaid minimum wages, liquidated damages, interest, and reasonable attorneys' fees and costs.  Defendants are

4

additionally liable to Plaintiffs Seek and Thornton, and similarly situated Servers, who worked in excess of 40 hours per workweek, for unpaid overtime wages, liquidated damages, interest, and reasonable attorneys' fees and costs.

3.     Plaintiff Waters also asserts an individual FLSA retaliation claim against Defendant Malone's based on the retaliatory termination of her employment following her opposition to Defendants' FLSA violations.   She further asserts individual claims against Defendant Malone's under 42 U.S.C. § 1981 ("Section 1981") for discrimination on the basis of her race, and retaliatory termination following her opposition to the race discrimination.

## JURISDICTION AND VENUE

4.     Pursuant to 28 U.S.C. § 1331 and § 1343, this Court has federal question jurisdiction over the individual and collective FLSA claims, as well as Plaintiff Waters's Section 1981 claims.

5.     Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), venue is proper in this Court because the majority of the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

6.     Plaintiffs are citizens of the United States of America and are residents of the State of Georgia.

7.     Defendants employed Plaintiff Waters from approximately 2016 until on or about October 2, 2022.  At all relevant times, Plaintiff Waters worked as a non-exempt employee in the positions of Server and Bartender.

8.     Defendants employed Plaintiff Seek from approximately 2019 until on or about March 7, 2022.  At all relevant times, Plaintiff Seek worked as a non-exempt employee in the positions of Server and Bartender.

9.     Defendants employed Plaintiff Thornton for approximately 5 years, with her employment ending on or about August 13, 2022.  At all relevant times, Plaintiff Thornton worked as a non-exempt employee in the positions of Server and Bartender.

10.     Defendant Malone's is a for-profit Georgia corporation with its principal place of business in Dekalb County, Georgia, at 3070 Mercer University Drive, Suite 100, Atlanta, Georgia 30341.

11.     Defendant Malone's may be served with process through its registered agent, Ferozali Delawalla, at 3070 Mercer University Drive, Suite 100, Atlanta, Georgia 30341.

12.     On information and belief, Defendant Ferozali Delawalla is a Georgia resident, who resides and conducts business in the Northern District of Georgia.

13.     Defendant Ferozali Delawalla may be served with process by delivering a copy of the summons and complaint to his business address at 3070 Mercer University Drive, Suite 100, Atlanta, Georgia 30341.

14.     Defendants are governed by and subject to 29 U.S.C. §§ 206, 207.

15.     Defendants are governed by and subject to 29 U.S.C. § 203(m)(2)(B).

16.     At all relevant times, Defendants have been, and continue to be, "employer[s]" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201, *et seq*.

17.     At all relevant times, in the course of Defendants' business operations, Defendants' employees, including Plaintiffs, have handled or otherwise used materials that have been moved or produced in interstate commerce.

18.     At all relevant times, Defendants have had two or more "employees engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

19.     At all relevant times, Defendants have had two or more "employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A)(i).

20. On information and belief, at all relevant times, Defendant Malone's has had an annual gross volume of sales or business done in excess of $500,000.00.

21. At all relevant times, Defendants were "employers" of Plaintiffs and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

22. On information and belief, at all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and similarly situated persons worked and made the decisions regarding the amount that Plaintiffs and similarly situated persons would be compensated, including the decision to withhold tips from Plaintiffs and other Servers and improperly distribute them among employees who are not customarily tipped, and is therefore an employer within the meaning of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23. Plaintiffs bring this action on behalf of themselves and all other similarly situated persons, pursuant to 29 U.S.C. § 216(b).

24. All Plaintiffs seek to represent the following group of similarly situated persons pursuant to 29 U.S.C. § 216(b):

> All persons who were, or are, employed by Defendants as Servers, or performing materially similar work as Servers, at any time within three

years prior to the filing of this Complaint, and who were subject to Defendants' Mandatory Tip Pool (the "FLSA Collective").

25.     Plaintiffs Seek and Thornton additionally seek to represent the following group of similarly situated persons pursuant to 29 U.S.C. § 216(b):

> All persons who were, or are, employed by Defendants as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint, and who worked in excess of 40 hours per workweek (necessarily including time spent working "off the clock"), and were not paid at an overtime rate of one-and-one half their regular rate of pay for all hours worked over 40 per workweek, due to Defendants' practice of requiring employees to work "off the clock" at the start of their shifts.

26.     The FLSA Collective and the Overtime Wage Collective are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number is dependent are in the sole possession of Defendants, upon information and belief, there are more than fifty (50) members in both the FLSA Collective and the Overtime Wage Collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

27.     Plaintiffs will fairly and adequately protect the interests of the members of the FLSA Collective and the Overtime Wage Collective and have retained counsel

who is experienced and competent in the fields of wage and hour law and collective action litigation.

28.     Questions of law and fact common to the members of the FLSA Collective and the Overtime Wage Collective predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members of the FLSA Collective and the Overtime Wage Collective.

## STATEMENT OF FACTS

29.     Defendant Malone's advertises that it is "one of Atlanta's staple restaurants."

30.     Defendant Delawalla owns Defendant Malone's and manages and controls its day-to-day operations.

31.     Defendants employed Plaintiff Waters as a Server and Bartender from approximately 2016 until on or about October 2, 2022.

32.     Defendants employed Plaintiff Seek as a Server and Bartender from approximately 2019 until on or about March 7, 2022.

33.     Defendants employed Plaintiff Thornton for approximately 5 years, with her employment ending on or about August 13, 2022.  At all relevant times, Plaintiff Thornton worked in the positions of Server and Bartender.

34.     Defendants employ, and have employed in the statutory period, a number of individuals as Servers, who they pay on an hourly basis and classify as non-exempt under the FLSA.

35.     Defendants normally pay Servers at a subminimum wage rate of $2.13 per hour and claim a tip credit against minimum wage.

36.     As Servers, Plaintiffs' job duties included waiting on tables, bartending, cleaning, rolling silverware, refilling the ice stations, and brewing and refilling tea urns.  Additionally, depending on Defendants' staffing, Plaintiffs and other Servers assisted with duties such as bussing tables, running food, handling to-go orders, washing dishes, seating customers, and setting up the expo line.

**I.      Mandatory "Off-the-Clock" Pre-Shift Meetings in Violation of the FLSA**

37.     Plaintiffs and other Servers were required to attend mandatory pre-shift meetings.

38.     Typically, the day-shift pre-shift meeting lasted approximately five (5) to ten (10) minutes, while the evening-shift pre-shift meeting lasted approximately fifteen (15) to twenty-five (25) minutes.

39.     The vast majority of the time, Plaintiffs and other Servers were not permitted to clock in for the pre-shift meeting, and were allowed to clock in only after the meeting was over.

40.     Further, on several occasions, Defendants required that some employees, including Plaintiffs Seek and Thornton miss the pre-shift meeting in order to begin serving customers.  On these occasions, Defendants refused to allow Plaintiffs to clock-in, even though they were assisting customers, until the pre-shift meeting was over.

41.     Additionally, there were instances in which Plaintiffs were not allowed to clock-in until between approximately 5:30 pm and 6:00 pm for the evening shift, requiring they work off the clock for a period of approximately 45 minutes to an hour and 15 minutes.

## II.     "Directly Supporting" Work and/or Work Not Part of the Tipped Occupation for Continuous Periods Exceeding Thirty 30 Minutes in Violation of the FLSA

42.     In addition to Plaintiffs and other Servers' normal job duties in actively serving customers, they were also required to complete numerous pre-shift and closing duties.

43.     Plaintiffs and other Servers were required to complete pre-shift duties, which duties included setting up the expo line by filling it with dressings, condiments, and ice, making tea, rolling silverware, and refilling napkins, straws, and side plates (collectively the "Pre-Shift Duties").

44.    It typically took Plaintiffs and other Servers approximately 30 to 45 minutes to complete the Pre-Shift Duties.

45.    At closing, Plaintiffs and other Servers' duties included: cleaning and restocking the dessert cooler, flipping and filling new salad dressing pans, draining and cleaning salad dressing wells, cleaning and restocking three (3) drink stations, emptying ice bins, emptying and cleaning tea urns, cleaning drink nozzles, cleaning the server stand, restocking the napkins, straws, plates, and condiments, cutting lemons, folding linens, rolling silverware, and sweeping (collectively the "Closing Duties").

46.    On average, it took Plaintiffs and other Servers approximately 30 to 90 minutes to complete their Closing Duties.

47.    During the months from approximately March 2020 to June 2021, there were several occasions where it took Plaintiffs and other Servers a substantially longer amount of time to complete the Closing Duties due to the lack of staff during the shift.

48.    Further, Plaintiffs and other Servers were periodically required to perform "bug-outs" which required them to prepare the restaurant for extermination.

49.    Bug-outs typically took approximately one to two hours to complete and were performed anywhere from once every two weeks to once per month.

50.    When Plaintiffs and other Servers spent more than 30 continuous minutes during pre-shift and post-shift periods on work "directly supporting" tips and/or work that was not part of the tipped occupation, the FLSA prohibited Defendants from claiming a tip credit against their minimum wage obligations to Plaintiffs and other Servers for such time.   Instead, Defendants were, and are, required to pay minimum wages for those hours worked in excess of 30 continuous minutes for work "directly supporting" tips and/or work that was not part of the tipped occupation.

### III.    20% Tip Assumption

51.    On information and belief, throughout Plaintiffs' employment, Defendants assumed the amount of tips Plaintiffs and other Servers received from customers on each transaction.

52.    Specifically, on information and belief, Defendants automatically assumed that Plaintiffs and other Servers earned 20% in tips on each transaction.

53.    The automatic 20% tip assumption was frequently inaccurate because, of course, customers did not always leave 20% in gratuity.   In fact, it was not uncommon for customers to leave a tip that was less than 20%.

54.    By implementing a policy in which Defendants assumed, and continue to assume, that Plaintiffs and other Servers were earning a 20% tip on each

transaction, Defendants evaded their obligations under the FLSA with respect to the tip credit and minimum wage.

55.   From approximately March 2020 until June 2021 (the "COVID-19 Period"), Defendants primarily served customers through to-go orders.

56.   During the COVID-19 Period because Plaintiffs were primarily servicing to-go orders during this time period, customers often left minimal to no tips on those orders.

57.   Notwithstanding the fact that Plaintiffs and other Servers were primarily servicing to-go orders and customers often left minimal to no tips, on information and belief, Defendants continued to assume that they were receiving a 20% tip on each transaction.

58.   The 20% tip assumption was generally far less than what Plaintiffs and other Servers actually received in tips from customers during the COVID-19 Period.

59.   During the COVID-19 Period, Defendants used the 20% automatic tip to artificially inflate the tips Servers received in an attempt to evade Defendants' obligations under the FLSA with respect to the tip credit and minimum wage.

### IV.   Mandatory Tip Pool That Violated the FLSA

60.   Defendants regularly paid Plaintiffs and other Servers a base subminimum wage of $2.13 per hour, although there were certain instances in which

15

Plaintiffs Seek and Thornton, and potentially other Servers, were paid $7.25 per hour.

61.     In addition to an hourly wage, Plaintiffs and other Servers received tips from Defendants' customers for their service.

62.     At the conclusion of each shift, Defendants' Point-of-Sale ("POS") system automatically calculated 3% of Plaintiffs' and other Servers' gross sales.

63.     Defendants had and, on information and belief, continue to have, a policy and practice of calculating 3% of the gross sales for each Server and then automatically deducting this amount from the tips the Server earned per shift, irrespective of the amount of tips the Server earned and actually received each shift (the "Mandatory Tip Pool").  Pursuant to the Mandatory Tip Pool, if a Server did not receive a tip from a customer, or received a small tip less than 3% of the gross sales, the Server effectively lost money by serving the customer.

64.     On information and belief, from this Mandatory Tip Pool, Defendants implemented two tip payment pools, "Tip Pool 1" and "Tip Pool 2."  Tip Pool 1 included those employees that serviced the bar and Tip Pool 2 included food expeditors, food runners, bussers, and hosts.

65.     Defendants represented to its Servers that the money taken from their tips pursuant to the Mandatory Tip Pool was paid to other non-Server employees.

However, the Mandatory Tip Pool included (a) employees who did not customarily and regularly receive tips, such as food expeditors who worked in the kitchen, and (b) in numerous instances, job positions that existed only in theory and/or other employees who were not actually working, to include hosts, food runners and bussers.  For example, there were periods of time when there was no host, or no busser working, and Defendants continued to take the 3% gross sales automatic deduction from the Servers' tips.

66.    Food expeditors, who are employees who do not customarily and regularly receive tips, were included in Defendants' tip pool arrangement.  Food expeditors had little to no contact with customers and primarily, if not exclusively, worked in the kitchen.

67.    On information and belief, when Defendants continued to take the 3% gross sales automatic deduction from the Servers' tips and positions were vacant, Defendant did not fully distribute those tips to other employees.  On information and belief, Defendants and/or Defendants' managers retained a portion of those withheld tips.

68.    Defendants' Mandatory Tip Pool was invalid under the FLSA and its regulations.

69.    Throughout the relevant time period, Plaintiffs and other Servers made numerous complaints to Defendants' management opposing Defendants' tip pooling practices.   On information and belief, Defendants took no action regarding the complaints and, in fact, often ignored the complaints altogether.

70.    Throughout her employment with Defendants, Plaintiff Waters opposed, among several other employment concerns, Defendants' tip pool practices and complained to General Manager Doug Flurry.

71.    Because Defendants' Mandatory Tip Pool was invalid, the FLSA prohibited Defendants from claiming a tip credit against their minimum wage obligations to Plaintiffs and other Servers.   Instead, Defendants were, and are, required to pay Servers the full minimum wage of $7.25 for all hours worked during the relevant time period.

72.    Defendants are additionally liable under the FLSA for the improperly withheld tips.

**V.    "Directly Supporting" Work and/or Work Not Part of the Tipped Occupation Exceeding 20 Percent of the Hours Worked in a Workweek**

73.    During the COVID-19 Period, the Servers were responsible for performing many of the functions previously performed by the bussers, food runners, food expeditors, and hosts, to include clearing tables of dirty dishes and

18

resetting tables; delivering food from the kitchen to customer tables; collecting orders from the window and ensuring they were plated correctly; including ensuring all condiments were on the plate; and seating customers and providing them with menus (the "Additional Job Duties").

74.   To the best of Plaintiffs' knowledge and belief, Plaintiffs and other Servers spent approximately forty (40) to fifty (50) percent of their work time performing these Additional Job Duties during the COVID-19 Period.

75.   To the best of Plaintiffs' knowledge and belief, during the periods of time prior to and after the COVID-19 Period, Servers spent approximately twenty (20) percent of their work time performing these Additional Job Duties, in addition to the time spent performing Pre-Shift Duties and Closing Duties.

76.   Throughout the relevant time period, including the COVID-19 Period, Defendants claimed a tip credit against their minimum wage obligations as an employer.  In doing so, Defendants counted the tips Plaintiffs and other Servers received as a credit towards the minimum wages due to Plaintiffs and other Servers.

77.   Defendants were prohibited from taking a tip credit for the time Servers spent on work "directly supporting" tips to the extent that the time performing such duties exceeded 20% of the Servers' workweek and to the extent that Servers performed such duties in excess of 30 consecutive minutes.  Defendants were also

19

prohibited from taking a tip credit for the time Servers spent on work that was not part of the tipped occupation. Defendants violated the FLSA by taking a tip credit with respect to all time worked, including time that fell within these categories. Instead, Defendants were, and are, required to pay minimum wages for those hours worked during the relevant time period.

## VI.    Artificial Tip Inflation in Violation of the FLSA

78.    In further violation of the FLSA, Defendants engaged in a policy and practice of artificially inflating the tips Servers received, thereby further invalidating the tip credit. On information and belief, Defendant Malone's assumed the amount of tips to be 20% of the gross tab, regardless of the amount actually received. Defendant Malone's regularly reviewed the amount of tips based on that assumption and when sufficient tips were not received, entered additional cash tips to make up the difference between the subminimum rate paid to the Servers and $7.25 per hour.

79.    Defendants' actions in inflating the tips received by Plaintiffs and other Servers was done in an attempt to evade their obligations under the FLSA with respect to the tip credit and minimum wage.

**VII.  Failure to Pay All Overtime Owed As a Result of Requiring Employees to Work "Off the Clock" in Violation of the FLSA**

80.     Throughout the relevant time period, some of Defendants' Servers, including Plaintiffs Seek and Thornton, worked in excess of forty (40) hours per workweek, necessarily including time spent working "off the clock."

81.     For example, Plaintiff Seek and Plaintiff Thornton regularly worked approximately six (6) to seven (7) hour shifts, five (5) to 6 days per week. Specifically, Plaintiff Seek typically worked 6 days per week, approximately 6 to 7 hours per day and Plaintiff Thornton typically worked 5 days per week, approximately 6 to 7 hours per day, except on Fridays, in which Plaintiff Thornton typically worked multiple shifts and worked approximately thirteen (13) hours total.

82.     Although Defendants paid some overtime pay to Plaintiffs Seek and Thornton and to Servers who worked in excess of 40 hours per workweek, Defendants did not pay <u>all</u> overtime owed to employees due to Defendants' practice of requiring employees to work "off the clock" at the start of their shift.

83.     Plaintiffs Seek and Thornton and members of the Overtime Wage Collective regularly worked in excess of 40 hours per workweek.

84.     Defendants knew or should have known that Plaintiffs Seek and Thornton and members of the Overtime Wage Collective regularly worked in excess of 40 hours per workweek.

85.    Each and every week that Plaintiffs Seek and Thornton and members of the Overtime Wage Collective worked in excess of 40 hours per week, and were required to attend pre-shift meetings "off the clock," Defendants failed to pay them overtime wages for time worked in excess of 40 hours per week.

86.    Defendants regularly, and as a routine policy and practice, failed to pay Plaintiffs Seek and Thornton and other members of the Overtime Collective at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per workweek.

**VIII.  Summary of FLSA Violations and Remedies**

87.    As a consequence of the numerous FLSA violations set forth in this Collective Action Complaint, Defendants are liable to Plaintiffs and all similarly situated individuals for: (1) the tips unlawfully withheld pursuant to the unlawful Mandatory Tip Pool; (2) full minimum wages for all time worked for which Defendants purported to take a tip credit using the Mandatory Tip Pool; (3) full minimum wages for all periods of time worked in which the tip credit could not be applied as a matter of law; and (4) full minimum wages for all "off the clock" work. Defendants are also liable to Plaintiffs Seek and Thornton, and the Overtime Wage Collective, for all unpaid overtime wages.  Defendants are additionally liable for an

equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs.

88.     On information and belief, Defendants' unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA.

89.     Defendants' unlawful withholding of tips from Plaintiffs and other members of the FLSA Collective was willful and was not in good faith.

90.     Defendants' FLSA violations were willful and were not in good faith.

**VIII. Race Discrimination in Violation of Section 1981, Plaintiff Waters's Complaints, and the Subsequent Retaliatory Termination**

91.     Plaintiff Waters is white.

92.     During Plaintiff Waters's employment, Defendant Malone's subjected her to discrimination on the basis of her race in violation of Section 1981.

93.     For a substantial portion of her employment with Defendant Malone's, Plaintiff Waters was one of two white Servers.

94.     In approximately January 2022, Defendant Malone's hired Manager Ebony (last name unknown).  Ebony is a black female.

95.     Shortly after her hire, Ebony took over the hosting duties and began seating customers and assigning Servers based on race.

23

96.     Specifically, for several months, Ebony sat only black customers in Plaintiff Waters's section in the restaurant and stated to other employees that her reason for doing so was to teach Defendant Malone's white employees a "lesson" about racism, or similar words.

97.     Given that Ebony would only assign black customers to Plaintiff Waters, if there were no black customers at any given time, or only a few black customers, Plaintiff Waters would be assigned fewer (or no) customers, thereby severely impacting her compensation.

98.     During this period of time, Ebony and Defendant Malone's subjected Plaintiff Waters to discrimination on the basis of her race in violation of Section 1981.

99.     Ebony also subjected Thomas Shumaker, a white male employee, to the same discriminatory treatment.  At the time, Plaintiff Waters and Mr. Shumaker were the only white Servers.

100.   On one occasion, Ebony informed Plaintiff Seek that she was seating customers in this discriminatory manner because she believed that Plaintiff Waters and Mr. Shumaker were racist.  Ebony further stated to Plaintiff Seek that, with respect to Plaintiff Waters and Thomas, "they won't be making any money as long as I'm here," or words to that effect.

101.   Plaintiff Seek complained to Defendant Malone's upper management about the discriminatory comments with respect to Plaintiff Waters and Mr. Shumaker.  On information and belief, no action was taken.

102.   The racial discrimination to which Plaintiff Waters was subjected was so obvious, it was evident to Defendant Malone's customers and other employees, and several of them mentioned to Plaintiff Waters that they believed she was being discriminated against.

103.   As of approximately mid-2022, Ebony no longer worked for Defendants.  Defendant Malone's then hired a new black female manager, (name unknown), who continued to subject Plaintiff Waters to the same discriminatory treatment.

104.   Plaintiff Waters opposed this racial discrimination, making numerous complaints to Mr. Flurry and several of Defendant Malone's other managers about the discrimination to which she was being subjected.

105.   No substantive action was taken with respect to any of Plaintiff Waters's complaints.

106.   Following, and because of Plaintiff Waters's repeated opposition to Defendants' unlawful tip pool arrangement and the race discrimination to which she was being subjected, Mr. Flurry began retaliating against her.

107.   In retaliation for her opposition to the tip pool practices and race discrimination, Mr. Flurry made false accusations about Plaintiff Waters and, on or about September 25, 2022, placed Plaintiff Waters on a week-long suspension, allegedly because she refused to work a weekend shift, notwithstanding the fact that she was not scheduled to work that weekend.

108.   On or about October 2, 2022, in further retaliation for Plaintiff Waters's repeated opposition to the unlawful tip pool arrangement and race discrimination, Defendants terminated her employment.

109.   Defendants terminated Plaintiff Waters in retaliation for her protected activity of complaining about Defendants' unlawful tip pool arrangement.

110.   Defendants' retaliatory termination of Plaintiff Waters was willful and not in good faith.

111.   Additionally, or alternatively, Defendant Malone's terminated Plaintiff Waters in retaliation for her protected activity of opposing race discrimination.

112.   Defendant Malone's actions and inactions in subjecting Plaintiff Waters to discrimination and terminating her employment in retaliation for her protected activity of opposing racial discrimination were willful, wanton and in reckless disregard for Plaintiff Waters's rights under Section 1981.

113.   Due to Defendants' retaliatory termination of Plaintiff Waters, she has incurred lost wages and benefits, and suffered emotional distress and inconvenience.

114.   Defendant Malone's acted with malice and/or reckless indifference to Plaintiff Waters's federally protected rights.

## COUNT ONE
**(Individual FLSA Claims Asserted by Plaintiffs Against Both Defendants)**
**Tip Theft in Violation of the FLSA**

115.   At all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA.

116.   At all relevant times, Plaintiffs and other Servers were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

117.   On information and belief, at all relevant times, Defendant Malone's had gross annual revenues in excess of $500,000.00.

118.   At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

119.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and other Servers worked and made the decisions regarding the amount that Plaintiffs and other Servers would be compensated, including the decision to withhold tips from

Plaintiffs and other Servers and improperly distribute them among employees who are not customarily tipped and/or to either allow Defendants or Defendants' management to retain them, and is therefore an employer within the meaning of the FLSA.

120.   The tipped wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs and other members of the FLSA Collective.

121.   The FLSA prohibits employers, such as Defendants, from retaining employees' tips, regardless of whether or not the employer takes a tip credit.

122.   The FLSA prohibits employers, such as Defendants, who seek to take a tip credit, from distributing employees' tips to employees who do not customarily and regularly receive tips.

123.   Defendants engaged in a routine and widespread pattern, policy and practice of violating the FLSA by keeping tips from its employees in a manner not consistent with a valid tip pooling arrangement.

124.   Defendants unlawfully withheld Plaintiffs' tips through the imposition of the unlawful Mandatory Tip Pool.

125.   On information and belief, Defendants unlawfully retained a portion of Plaintiffs' tips.

126.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 203(m)(2)(B).   Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

127.   Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

128.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants all tips unlawfully withheld, an additional equal amount as liquidated damages, interest, and attorneys' fees and costs.

## COUNT TWO
### (Collective FLSA Claim Asserted Against Both Defendants)
### Tip Theft in Violation of the FLSA

129.   Plaintiffs seek to represent the following collective group of employees:

> All persons who were, or are, employed by Defendants as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint, and who were subject to Defendants' Mandatory Tip Pool.

This is the "FLSA Collective."

130.   At all relevant times, Defendants were, and continue to be, employers engaged in commerce within the meaning of the FLSA.

131.   At all relevant times, Plaintiffs and other members of the FLSA Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

132.   Upon information and belief, at all relevant times, Defendant Malone's had gross revenues in excess of $500,000.00.

133.   At all relevant times, Defendants employed, and/or continue to employ, members of the FLSA Collective within the meaning of the FLSA.

134.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and other Servers worked and made the decisions regarding the amount that Plaintiffs and other Servers would be compensated, including the decision to withhold tips from Plaintiffs and other Servers and improperly distribute them among employees who are not customarily tipped and/or to either allow Defendants or Defendants' management to retain them, and is therefore an employer within the meaning of the FLSA.

135.   The tipped wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs and other members of the FLSA Collective.

136.   The FLSA prohibits employers, such as Defendants, from keeping tips from its employees, such as Plaintiffs and other members of the FLSA Collective, regardless of whether or not the employer takes a tip credit.

137.   The FLSA prohibits employers, such as Defendants, who seek to take a tip credit, from distributing employees' tips to employees who do not customarily and regularly receive tips.

138.   Defendants engaged in a routine and widespread pattern, policy and practice of violating the FLSA by withholding tips earned by the FLSA Collective through the unlawful Mandatory Tip Pool, pursuant to which it distributed tips of the FLSA Collective to employees who do not customarily and regularly receive tips and/or, on information and belief, retained such tips.

139.   Defendants unlawfully withheld tips earned by members of the FLSA Collective through the imposition of the unlawful Mandatory Tip Pool.

140.   On information and belief, Defendants retained a portion of the tips earned by members of the FLSA Collective during the relevant time period.

141.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA.   Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

142.   Defendants did not make a good faith effort to comply with the FLSA with respect to the compensation of members of the FLSA Collective.

143.   Due to Defendants' FLSA violations, members of the FLSA Collective are entitled to recover from Defendants all such tips unlawfully withheld, and an additional amount and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT THREE
**(Individual FLSA Claims Asserted by Plaintiffs Against Both Defendants)**
**Willful Failure to Pay Minimum Wage In Violation of the FLSA**

144.   At all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

145.   At all relevant times, Plaintiffs and other Servers were engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

146.   On information and belief, at all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

147.   At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

148.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and the FLSA Collective worked, and made decisions regarding the amount that Plaintiffs

32

and the FLSA Collective would be compensated, and is therefore an employer within the meaning of the FLSA.

149.   The minimum wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs.

150.   The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Plaintiffs, at the federal minimum wage for each hour worked.

151.   Defendants engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs to participate in an invalid tip pool, including unlawfully withholding tips and/or distributing tips to employees who were not customarily tipped.   Defendants' unlawful practices thereby invalidated the tip credit they purported to take against their minimum wage payment obligations, requiring Defendants to pay Plaintiffs at the federal minimum wage for all hours worked during the relevant time period.

152.   Defendants further engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs to spend more than 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation.   Defendants required Plaintiffs to spend approximately 30 to 45 minutes on Pre-Shift Duties and 30 to 90 minutes on Closing

Duties, exceeding 30 continuous minutes performing work "directly supporting tips." The FLSA requires Defendants to pay Plaintiffs at the federal minimum wage for time spent performing work "directly supporting" tips in excess of 30 minutes and/or work that was not part of the tipped occupation.

153.   Additionally, Defendants engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs to spend more than 20 percent of their workweek performing work "directly supporting" tips including certain Additional Job Duties in addition to the time spent performing Pre-Shift Duties and Closing Duties. Defendants' unlawful practices thereby invalidated the tip credit they purported to take against their minimum wage obligations, requiring Defendants to pay Plaintiffs at the federal minimum wage for time worked in excess of the 20 percent workweek limitation on "directly supporting" work time during the relevant time period.

154.   Defendants further violated the FLSA by requiring Plaintiffs to work "off the clock" prior to their scheduled shifts.

155.   Defendants are liable to Plaintiffs for, *inter alia*, the full amount of minimum wages at a rate of $7.25 per hour for all hours worked during the statutory period.

156.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

157.   Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

158.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their full unpaid minimum wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT FOUR**
**(Collective FLSA Claim Asserted Against Both Defendants)**
**<u>Willful Failure to Pay Minimum Wage in Violation of the FLSA</u>**

159.   Plaintiffs  seek  to  represent  the  following  collective  group  of employees:

> All persons who were, or are, employed by Defendants as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint, and who were subject to Defendants' Mandatory Tip Pool.

This is the "FLSA Collective," coterminous with Count Two.

160.   At all relevant times, Defendants were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206.

161.   At all relevant times, Plaintiffs and other members of the FLSA Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 206.

162.   On information and belief, at all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

163.   At all relevant times, Defendants employed and/or continue to employ members of the FLSA Collective within the meaning of the FLSA.

164.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and the FLSA Collective worked, and made decisions regarding the amount that Plaintiffs and the FLSA Collective would be compensated, and is therefore an employer within the meaning of the FLSA.

165.   The minimum wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs and other members of the FLSA Collective.

166.   The FLSA requires employers, such as Defendants, to compensate non-exempt employees, such as Plaintiffs and other members of the FLSA Collective, at the federal minimum wage for each hour worked.

167.   Defendants engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs and other members of the

FLSA Collective to participate in an invalid tip pool, including unlawfully withholding tips and/or distributing tips to employees who were not customarily tipped. Defendants' unlawful practices thereby invalidated the tip credit they took against their minimum wage obligations, requiring Defendants to pay Plaintiffs and other members of the FLSA Collective at the federal minimum wage for all hours worked during the relevant time period.

168.   Defendants further engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs and other members of the FLSA Collective to spend more than 30 continuous minutes performing work "directly supporting" tips and/or work that was not part of the tipped occupation. Defendants required Plaintiffs and other members of the FLSA Collective to spend approximately 30 to 45 minutes on Pre-Shift Duties and 30 minutes to 90 minutes on Closing Duties, exceeding 30 continuous minutes performing work "directly supporting tips." The FLSA requires Defendants to pay members of the FLSA Collective at the federal minimum wage for time spent performing work "directly supporting" tips in excess of 30 minutes, and/or work that was not part of the tipped occupation.

169.   Additionally, Defendants engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by requiring Plaintiffs and other members

of the FLSA Collective to spend more than 20 percent of their workweek performing work "directly supporting" tips, including certain Additional Job Duties in addition to the time spent performing Pre-Shift Duties and Closing Duties.  Defendants' unlawful practices thereby invalidated the tip credit they purported to take against their minimum wage obligations, requiring Defendants to pay Plaintiffs and other members of the FLSA Collective at the federal minimum wage for time worked in excess of the 20 percent workweek limitation on "directly supporting" work time during the relevant time period.

170.   Defendants further violated the FLSA by requiring Plaintiffs and other members of the FLSA Collective to work "off the clock" prior to their scheduled shifts.

171.   Defendants did not compensate Plaintiff and other members of the FLSA Collective at the minimum wage for all time worked during the relevant time period.

172.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

173.   Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other members of the FLSA Collective.

174.   Due to Defendants' FLSA violations, Plaintiffs and other members of the FLSA Collective are entitled to recover from Defendants their unpaid minimum wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT FIVE
**(Individual FLSA Claims Asserted by Plaintiffs Seek and Thornton Against Both Defendants)**
**<u>Willful Failure to Pay Overtime Wages In Violation of the FLSA</u>**

175.   At all relevant times, Defendants were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

176.   At all relevant times, Plaintiffs Seek and Thornton were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

177.   On information and belief, at all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

178.   At all relevant times, Defendants employed and/or continue to employ Plaintiffs within the meaning of the FLSA.

179.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs worked, and made decisions regarding the amount that Plaintiffs would be compensated, and is therefore an employer within the meaning of the FLSA.

180.   The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs.

181.   The FLSA requires employers, such as Defendants, to compensate non-exempt employees, such as Plaintiffs, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

182.   Defendants regularly, and as a routine policy and practice, failed to pay Plaintiffs overtime wages at one-and-one half their regular rate for all time worked in excess of 40 hours per week, when Plaintiffs Seek and Thornton were required to work "off the clock."

183.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

184.   Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

185.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT SIX
### (Collective FLSA Claim Asserted Against Both Defendants)
### Willful Failure to Pay Overtime Wages in Violation of the FLSA

186.   Plaintiffs Seek and Thornton seek to represent the following collective group of employees:

> All persons who were, or are, employed by Defendants as Servers, or performing materially similar work as Servers, at any time within three years prior to the filing of this Complaint, and who worked in excess of 40 hours per workweek (necessarily including time spent working "off the clock"), and were not paid at an overtime rate of one-and-one half their regular rate of pay for all hours worked over 40 per workweek, due to Defendants' practice of requiring employees to work "off the clock" at the start of their shifts.

This is the "Overtime Wage Collective."

187.   At all relevant times, Defendants were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

188.   At all relevant times, Plaintiffs and other members of the Overtime Wage Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

189.   On information and belief, at all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

190.   At all relevant times, Defendants employed and/or continue to employ members of the Overtime Wage Collective within the meaning of the FLSA.

191.   At all relevant times, Defendant Delawalla asserted control of Defendant Malone's day-to-day operations at the location where Plaintiffs and the Overtime Wage Collective worked, and made decisions regarding the amount that Plaintiffs and the Overtime Wage Collective would be compensated, and is therefore an employer within the meaning of the FLSA.

192.   The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiffs and other members of the Overtime Wage Collective.

193.   The FLSA requires employers, such as Defendants, to compensate non-exempt employees, such as Plaintiffs and other members of the Overtime Wage Collective, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

194.   Defendants regularly, and as a routine policy and practice, failed to pay Plaintiffs Seek and Thornton and other members of the Overtime Collective overtime wages at one-and-one half their regular rate for all time worked in excess

of 40 hours per week, during workweeks in which Plaintiffs Seek and Thornton and other members of the Overtime Collective worked in excess of 40 hours and worked off the clock.

195.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

196.   Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs Seek and Thornton and other members of the Overtime Wage Collective.

197.   Due to Defendants' FLSA violations, Plaintiffs and other members of the Overtime Wage Collective are entitled to recover from Defendants their unpaid overtime wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**COUNT SEVEN**
**(Individual Claim Asserted by Plaintiff Waters Against Defendant Malone's)**
**<u>Retaliation in Violation of the FLSA</u>**

198.   Plaintiff Waters engaged in protected activity under the FLSA when she opposed Defendants' unlawful wage practices, including complaining that Defendants required her to participate in an invalid tip pool.

199.   Defendant Malone's retaliated against Plaintiff Waters for engaging in protected activity under the FLSA by placing her on suspension.

200.   In further retaliation for Plaintiff Waters's protected activity, on or about October 2, 2022, Defendant Malone's terminated her employment, in violation of the FLSA.

201.   Defendant Malone's terminated Plaintiff Waters because she opposed FLSA violations, in specific violation of 29 U.S.C. § 215.

202.   As a consequence of Defendant Malone's retaliatory termination of Plaintiff Waters, she has incurred lost wages and benefits and suffered emotional distress and inconvenience.

203.   As a result of Defendant Malone's retaliation, Plaintiff Waters is entitled to: (a) lost wages and benefits, including back pay, front pay and/or reinstatement; (b) liquidated damages; (c) compensatory damages; (d) interest; and (e) attorneys' fees and costs.

## COUNT EIGHT
**(Individual Claim Asserted by Plaintiff Waters Against Defendant Malone's)**
**<u>Discrimination on the Basis of Race in Violation of Section 1981</u>**

204.   Plaintiff Waters is white.

205.   Plaintiff Waters had an employment contract with Defendant Malone's within the meaning of 42 U.S.C. § 1981 under which, *inter alia*, Plaintiff Waters performed work for Defendants, and Defendants compensated Plaintiff Waters for work.

206.   Plaintiff Waters fully performed under the contract.

207.   Defendant Malone's discriminated against Plaintiff Waters on the basis of her race when Defendant Malone's management refused to seat customers in Plaintiff's section unless they were black, with the stated intention to teach Plaintiff and other white employees a "lesson" about racism.

208.   Defendant Malone's expressly discriminated against Plaintiff Waters on the basis of race in refusing to seat her white customers, which directly and materially decreased Plaintiff's compensation.

209.   Defendant Malone's actions in subjecting Plaintiff Waters to racial discrimination were willful, wanton, and in reckless disregard for Plaintiff Waters's rights under Section 1981.

210.   Defendant Malone's acted with malice or with reckless indifference to Plaintiff Waters's federally protected rights.

211.   As a consequence of Defendant Malone's violations of Section 1981, Plaintiff Waters has incurred lost wages, and suffered emotional distress and inconvenience.

212.   Plaintiff Waters is entitled to declaratory relief, lost wages, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

**COUNT NINE**
**(Individual Claim Asserted by Plaintiff Waters Against Defendant Malone's)**
**Retaliatory Suspension and Termination in Violation of Section 1981**

213.   Plaintiff Waters engaged in protected activity under Section 1981 when she complained to General Manager, Doug Flurry, about the racial discrimination to which she was being subjected by Defendant Malone's management.

214.   Defendant Malone's retaliated against Plaintiff Waters for engaging in protected activity under Section 1981 by placing her on suspension.

215.   Defendant Malone's further retaliated against Plaintiff Waters for engaging in protected activity under Section 1981 by terminating her employment.

216.   As a consequence of the retaliation that she experienced from Defendant Malone's, Plaintiff Waters has incurred lost wages and benefits and experienced emotional distress and inconvenience.

217.   Defendant Malone's retaliation against Plaintiff Waters for engaging in the protected activity of opposing race discrimination was willful, wanton, and in reckless disregard for Plaintiff Waters's rights under Section 1981.

218.   Defendant Malone's acted with malice or with reckless indifference to Plaintiff Waters's Section 1981 rights.

219.   Plaintiff Waters seeks all available relief under Section 1981, including lost wages and benefits, compensatory damages, punitive damages, interest, and attorneys' fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Overtime Wage Collective demand a **TRIAL BY JURY** and request the following relief:

a)      Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons in the FLSA Collective and the Overtime Wage Collective as defined herein, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this

action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

b)    A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA;

c)    An award in the amount of the unlawfully withheld tips in violation of the FLSA to Plaintiffs and the FLSA Collective;

d)    An award of liquidated damages as a result of Defendants' unlawful withholding of tips to Plaintiffs and the FLSA Collective;

e)    An award of unpaid minimum wages due under the FLSA to Plaintiffs and the FLSA Collective;

f)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages to Plaintiffs and the FLSA Collective;

g)    An award of unpaid overtime wages due under the FLSA to Plaintiffs Seek and Thornton and the Overtime Wage Collective;

h)    An award of liquidated damages as a result of Defendants' failure to pay overtime wages to Plaintiffs Seek and Thornton and the Overtime Wage Collective;

i)      An award of lost wages and benefits, liquidated damages, and compensatory damages to Plaintiff Waters with respect to her retaliation claim under the FLSA;

j)      A declaratory judgement that Defendant Malone's practices complained of herein violated Plaintiff Waters's rights under Section 1981;

k)      Lost wages and benefits to Plaintiff Waters resulting from Defendant Malone's Section 1981 violations;

l)      Compensatory damages to Plaintiff Waters for Defendants Malone's Section 1981 violations;

m)     Punitive damages to Plaintiff Waters for Defendant Malone's Section 1981 violations;

n)      An award of prejudgment and post-judgment interest;

o)      An award of costs and expenses of this action, including reasonable attorneys' and expert fees and costs; and

p)      Such other further relief as the Court deems just and proper.

Dated this 24th day of January 2023.

Respectfully submitted,

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463

49

Tierra M. Monteiro
Georgia Bar No. 743224
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue
Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
tmonteiro@scottemploymentlaw.com

Counsel for Plaintiffs